# Delegation of Authority to Approve
# DEA Undercover Operations

The general rule with respect to delegations is that any statutorily conferred authority is delegable, at least in the absence of any indication of congressional intent that the official named must personally exercise the authority conferred upon him.

The Attorney General and the Administrator of the Drug Enforcement Administration may delegate their respective authority to approve DEA undercover operations pursuant to § 203(b)(1) of Pub. L. No. 98–411, 98 Stat. 1545, 1559–60 (1984). Nothing in the language, purpose, or legislative history of the statute demonstrates an intent to preclude delegation. Rather, the statute reflects the common legislative practice of conferring general authority upon the head of a department or agency.

November 20, 1985

MEMORANDUM OPINION FOR THE CHIEF COUNSEL,
DRUG ENFORCEMENT ADMINISTRATION

This responds to your request for advice from this Office concerning whether the statutory authority to approve Drug Enforcement Administration (DEA) operations may be delegated. The DEA's authority to employ certain undercover techniques was expressly conferred by § 203(b)(1) of Pub. L. No. 98–411, 98 Stat. 1545, 1559–60 (1984), the Department of Justice appropriations act for fiscal year 1985. The legislation was requested because of the perceived legal impediments to, or uncertainties surrounding, the DEA's use of these undercover techniques in the absence of express statutory exemption from general prohibitions in the law. In brief, § 203 authorizes the DEA, in the course of its undercover operations, to use appropriated funds to purchase buildings or lease space, to establish or acquire proprietary corporations, and to make bank deposits; and to use the proceeds of an undercover operation to offset the expenses of that operation (sometimes referred to as "proprietary operations"), all without regard to certain identified general statutory restrictions that might otherwise apply to such activities.[1]

---

[1] The FBI obtained authorization to engage in proprietary operations in the Department's appropriations authorization act for fiscal year 1979, Pub. L. No 95–624, § 18(a), 92 Stat. 3459, 3465–66 (1978). The authority to establish or acquire corporations in undercover operations was granted to the FBI the following year in the Department's appropriations authorization act for fiscal year 1980, Pub. L. No. 96–132, § 7(a), 93 Stat. 1040, 1045–46 (1979). Except for one brief period, the FBI has had this authority continuously since that time.

The DEA's authority to engage in some of these techniques has been the subject of legal opinions of this Office. This Office has previously opined, for example, that the DEA had inherent authority to make bank deposits, on certain conditions, notwithstanding the general statutory prohibition on the deposit in banks of public moneys.[2] This Office has also previously concluded, however, that the DEA did not have the implied authority to engage in proprietary operations.

Under § 203, the DEA is expressly authorized, for the first time, to use the four undercover techniques previously authorized for the FBI. Section 203 provides that these techniques are available upon the written certification of the Administrator of the DEA and the Attorney General. You have asked whether the authority of each of these officials to certify the necessity for the use of the undercover techniques is delegable.[3]

The general rule is that any statutorily conferred authority is delegable, at least in the absence of any indication of congressional intent that the official named must personally exercise the authority conferred upon him. *See United States* v. *Giordano*, 416 U.S. 505, 514 (1974).[4]

In *Giordano*, the government argued that "merely vesting a duty in the Attorney General . . . evinces no intention whatsoever to preclude delegation to other officers in the Department of Justice, including those on the Attorney General's own staff." *Id.* at 513. The Supreme Court noted that "as a general proposition, the argument is unexceptional." *Id.* at 514. The Court found, however, that in this case, "the matter of delegation is expressly addressed . . . , and the power of the Attorney General in this respect is specifically limited to delegating his authority to [those mentioned in the statute]. Despite [28 U.S.C.]

---

[2] Memorandum for Robert T. Richardson, Acting Chief Counsel, Drug Enforcement Administration from Larry L. Simms, Acting Assistant Attorney General, Office of Legal Counsel (Oct. 2, 1981).

[3] The original legislation relating to the FBI conferred the authority to engage in the three specific undercover techniques "only upon the written certification that the particular undercover technique was necessary for the conduct of the undercover operation by the Director of the [FBI] and the Attorney General (or, if designated by the Attorney General, the Deputy Attorney General)." 92 Stat at 3466. In 1979, when this section was reenacted and amended expressly to authorize the use of corporations in undercover operations, the certification authority was also amended If so authorized by the Director, the Associate Director of the FBI also was specifically authorized to certify the necessity for the use of undercover techniques. 93 Stat. at 1045–46. At that time, it does not appear that the certification requirement was imposed on the use of corporations.

In 1983, when this section was reenacted as § 205(b)(1) of the Department's appropriations act for fiscal year 1984, Pub. L No. 98–166, 97 Stat. 1071, 1086–88 (1983), the certification requirement was changed again to require certification of the necessity for the use of corporations and also to allow certification by:

the Director of the [FBI] (or, if designated by the Director, a member of the Undercover Operations Review Committee established by the Attorney General's Guidelines on FBI Undercover Operations, as in effect on July 1, 1983) and the Attorney General (or, if designated by the Attorney General, a member of such Review Committee).

The Department's fiscal year 1985 appropriations act continued these provisions 98 Stat. at 1559.

[4] *Giordano* involved the authorization requirement of the federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2516(1), which empowers the "Attorney General, or any Assistant Attorney General specially designated by the Attorney General" to authorize an application to a federal judge for an order authorizing or approving a wiretap. The Supreme Court held that this provision did not authorize approval by the Executive Assistant to the Attorney General. The Court also rejected, on the facts of the case, the Attorney General's general authority over the Department of Justice, *see* 28 U S.C § 509, and his general authority to delegate, *see id.* § 510, as bases for the authority to delegate.

95

§ 510, Congress does not contemplate that the duties assigned to the Attorney General may be freely delegated." *Id.*

According to the Court in *Giordano*, precise language forbidding delegation is not required. The Court held that the language of 28 U.S.C. § 2516(1) was intended to limit the power to authorize wiretaps applications to the Attorney General himself and to those identified in the statute. The Court also examined the purpose and the legislative history of the wiretap statute and concluded that they supported this interpretation.

Applying these principles to your question of delegation, we conclude that both the Attorney General and the Administrator of the DEA may delegate their respective authority under § 203 to certify the necessity for the use of undercover techniques. We reach that conclusion as follows.

As its plain language indicates, and as interpreted by the Court in *Giordano*, in the absence of a contrary congressional intent, 28 U.S.C. § 510 generally authorizes the Attorney General to delegate the authority vested in him.[5] Specifically, with regard to DEA functions, § 6 of Reorganization Plan No. 2 of 1973, *reprinted in* 28 U.S.C. § 509 note, provides that the Attorney General may "make such provisions as he shall deem appropriate authorizing the performance of [drug enforcement] functions by any officer, employee, or agency of the Department of Justice." The same principles apply to the Administrator, who is designated as the head of the agency, *see id.* § 5, and charged with performing the functions vested in the Attorney General by the Reorganization Plan as well as other drug control laws, *see* 28 C.F.R. §§ 0.100, 0.101. Thus, the Administrator is authorized "to redelegate any of the powers and functions vested in him by [the regulations]." *Id.* § 0.104.

Nothing in the language of § 203 discloses a congressional intent to preclude delegation. There is, of course, no express preclusion of delegation, nor is there any language comparable to the wiretap provision construed in *Giordano* specifically identifying the persons to whom the authority conferred may be delegated. Rather, § 203 on its face appears to reflect the common legislative practice of conferring general authority upon the head of a department or agency at the time that Congress specifically confers a new power by statute or creates a statutory duty, with the common practice thereafter being delegation within that department or agency of the authority conferred or duty imposed upon its head.[6]

---

[5] Section 510 provides: "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

[6] It is not necessary to determine here whether the language regarding delegation in the FBI's authorization would preclude further, or different, delegation. We note, however, that with regard to the FBI, we find nothing to indicate a congressional intent to preclude any other delegation. As we understand it, the language that Congress adopted was proposed by the FBI when it was first enacted and on both occasions when it was changed, and it is reasonable to conclude that Congress intended solely to authorize what the Department asked for and did not intend to preclude or limit delegation. Moreover, we have found nothing in the purpose or legislative history of the certification requirement applicable to the FBI to compel the conclusion that delegation of the certification authority was intended to be limited to only the persons specifically mentioned.
Continued

Nor have we discerned anything regarding the purpose of § 203 that supports, much less compels, the conclusion that Congress intended to preclude delegation by the Administrator or the Attorney General. Unlike Title III, which was enacted specifically to impose stringent limitations on the Department's prior practices regarding warrantless wiretaps, specific procedures to obtain authorization for a wiretap, and vigorous penalties for violation of those procedures, § 203 was enacted to exempt the DEA from limitations imposed by general statutory provisions that might otherwise be thought to preclude the use of the four undercover techniques. In other words, the purpose of § 203 was to expand the agency's authority, not to restrict it. It is therefore not necessary to construe the legislation as imposing the same type of restrictions on the exercise of that authority as the Court felt to be required in *Giordano*.

Finally, we have examined the legislative history of § 203 as it relates to the DEA and have discovered no statements of congressional intent to preclude delegation. As we understand it, in its legislative proposal within the Department, the DEA requested the authority to employ the undercover techniques, and the Department's draft bill as introduced in the Senate authorized certification by the Administrator "or by a person designated to act for the Administrator in his absence." S. 1191, 98th Cong., 1st Sess. § 600(a)(4), 129 Cong. Rec. 10616, 10620 (1983). No further action was taken on this bill, however, and the undercover authorities and the certification requirement in Pub. L. No. 98–411 applicable to the DEA were added by the House Committee on Appropriations.[7] There are thus no express indications in the legislative history why the Committee chose the language that it chose.[8] Similarly, we have discovered no

[6] (. . . continued)

In this regard, we have examined the legislative history of the fiscal year 1979 appropriations authorization act, which first conferred the authority on the FBI to engage in undercover techniques, *see* S. Rep. No. 911, 95th Cong., 2d Sess. (1979); H.R. Conf. Rep. No. 1777, 95th Cong., 2d Sess. (1979), the legislative history of the fiscal year 1980 act, which expressly authorized the Director of the FBI to designate the Associate Director to certify the necessity for the use of undercover techniques, *see* S. Rep. No. 173, 96th Cong., 1st Sess. 30–31 (1979), *reprinted in* 1979 U.S.C.C.A.N. 2003, 2032–33, H.R. Conf. Rep. No. 628, 96th Cong., 1st Sess. 3 (1979), *reprinted in* 1979 U.S.C.C.A.N. 2044, 2047, and the legislative history of the fiscal year 1984 act, which changed the express delegatee for both the Attorney General and the Director to a member of the Undercover Operations Review Committee, *see* H.R. Conf. Rep. 478, 98th Cong., 1st Sess. 28 (1983). *See generally supra* notes 1 & 3.

In none of these reports have we discovered any express indication that Congress intended to preclude or limit delegation, to require the Director, the Attorney General, or the delegatee specifically mentioned personally to exercise the authority conferred, or to require the certification to be made "at the highest level" or words to that effect.

[7] The provision does not appear in the bill as reported by the subcommittee to the full Committee on May 9, 1984, but it does appear in the bill as reported by the Committee to the full House on May 23, 1984. The Committee's report on the bill, H.R. Rep. No. 802, 98th Cong., 2d Sess. (1984), does not discuss the provision as to the DEA.

[8] The comparable provision relating to the FBI has appeared in three different statutes, but none of them use exactly the language adopted in § 203 applicable to the DEA. It is clear that the structure for delegation envisioned by the language enacted with regard to the DEA could not have been made precisely parallel to that of the FBI because the DEA does not utilize an undercover operations review committee. To the extent that the House Appropriations Committee had in mind the history of the FBI's authority, several different conclusions are possible.

Continued

statements applicable either to the FBI, in the legislative history of the various authorization and appropriations acts since 1979, or to the DEA, in the legislative history of § 203, that disclose a congressional intent to preclude delegation or to require the exercise of the authority personally by the officials named. *See supra* note 6.

We therefore conclude that both the Administrator of the DEA and the Attorney General may delegate the authority to certify the necessity for the use of undercover techniques conferred upon each of them by § 203 of Pub. L. No. 98–411.

RALPH W. TARR
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[8] (. . . continued)

In the absence of a request by the DEA for specific mention in the authorization of officials to whom the authority could be delegated, the Committee could have specifically intended to choose language that would leave the Administrator of the DEA and the Attorney General the most free to delegate their authority. Alternatively, knowing that the provision relating to the FBI had been amended twice as the FBI gained experience in administering the certification requirement, the Committee could have assumed that the inclusion in the FBI's authority of specific, named officials did no more than reflect the current practice at the FBI; there was no such practice at the DEA to reflect in the language of § 203. Other conclusions are no doubt also possible. Given the variety of possibilities, any attempt to draw a firm conclusion regarding delegation by the Administrator and the Attorney General by comparison to the comparable FBI provision seems futile.